FILED

May 22, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:51 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| DEVELYNNE SMITH | ) | |
| Employee, | ) | Docket No.  2014-06-0033 |
| | ) | |
| v. | ) | State File No. 57489-2014 |
| | ) | |
| PEOPLE LINK STAFFING | ) | Judge Joshua Davis Baker |
| SOLUTIONS, | ) | |
| | ) | |
| Employer. | ) | |

## COMPENSATION HEARING ORDER

The Court convened a compensation hearing on April 27, 2017.  The focus of this claim is whether Ms. Smith is entitled to temporary and permanent disability benefits for a left long finger fracture that occurred while employed with People Link Staffing Solutions (People Link).  The disputed legal issues are whether Ms. Smith's work-related fingertip injury caused her inability to work from January 28, 2015, to April 6, 2016, and whether she is entitled to permanent disability benefits for her work-related fingertip injury.  People Link argues Ms. Smith is not entitled to permanent disability benefits or additional temporary disability benefits.  For the reasons provided below, the Court holds that Ms. Smith is entitled to temporary disability benefits from January 28 to August 14, 2015, and is not entitled to permanent partial disability benefits.

### Claim History

A metal basket fractured Ms. Smith's left long finger while she was working as a machine operator for People Link on July 16, 2014, at TRW Automotive in Lebanon, Tennessee.  People Link initiated temporary disability benefits when the initial medical provider, U.S. Healthworks, imposed work restrictions.  It then authorized a referral from U.S. Healthworks to orthopedic surgeon, Dr. Vincent Novak.

Ms. Smith first saw Dr. Novak on August 14, 2014.  At that visit, he diagnosed Ms. Smith with a left long-finger fracture, provided her a splint and imposed restrictions

that prohibited her from lifting more than five pounds with her left hand and from using her left long finger. He scheduled her to return for a follow-up visit.

At a follow-up appointment in November, Ms. Smith began to complain of pain in her entire left hand, not just the fractured long finger. Dr. Novak noted Ms. Smith's "disgruntled and frustrated" state and "persistent complaints of left hand/wrist pain and associated subjective limited use." According to the treatment notes, she "declined" Dr. Novak's recommendation to work with limited use of the left hand and no use of the long finger. Instead, she insisted she was "unable to work with her left hand at all." Consequently, he increased the restrictions to include "no use of the left hand/arm" until he could ascertain the source of her left hand pain complaints. (Ex. 1 at 173.)

Concerning the cause of the pain, Dr. Novak said in his deposition, "I could not find any objective or subjective explanation for why she would have so much pain in the remainder of her hand." *Id.* at 26. He recommended additional MRI and CT scans "to evaluate for any underlying objective abnormality which could potentially explain her complaints of residual/generalized hand/wrist pain of uncertain etiology." *Id.* at 173.

Ms. Smith underwent the CT scan and MRI and then returned to Dr. Novak in December to review the results. The CT scan revealed Ms. Smith's long finger fracture had not completely healed and she continued to complain of pain in her left hand. Dr. Novak could not explain "how a crush injury to the tip of the long finger would cause volar wrist/hand pain to the extent of her complaints." He also noted that Ms. Smith again requested restrictions that would prohibit use of her left hand at work. Dr. Novak provided the restrictions and explained the reason for doing so in his deposition.

In his deposition, Dr. Novak stated, "There is legitimate reason for her to have restrictions, to some extent, up until [December 9, 2014] because . . . the CT scan showed that she still [did not have] complete healing of the fracture." *Id*. at 76. Furthermore, Dr. Novak stated explicitly that the restrictions "were related to and appropriate for the long finger fracture injury." *Id*. at 77. He further stated that, while the long finger fracture could not be definitively related as the cause of Ms. Smith's hand pain, "limited use of the hand, no use of the long finger" is typically recommended for "an isolated long fingertip injury." *Id*. at 57. He characterized the restriction imposed as "humane." *Id*. at 56.

On August 14, 2015, a little over eight months after her last treatment from Dr. Novak, Ms. Smith underwent an examination by Dr. Jason Haslam. At that office visit, Dr. Haslam observed "a healed fracture to the distal phalanx of the long finger" and stated unequivocally in his deposition, "that fracture was healed." (Ex. 2 at 50, 30.) Dr. Haslam further testified: "From my opinion in August, I thought she could do full work activities." *Id*. at 42.

On October 27, 2015, Ms. Smith returned to Dr. Novak. At that appointment, Dr. Novak observed a "healed left long fingertip tuft fracture" so that "there was no indication for any need for restrictions related to her work injury at that time." He recommended that she "return to activity unrestricted including work, effective immediately." *Id.* at 71. He also mentioned the "long time" between visits and commented that it was "anyone's guess" as to when Ms. Smith's December 2014 restrictions became unnecessary, as he "didn't see her in that time period."

Although Dr. Novak did not see Ms. Smith for approximately ten months and could not determine the date she reached MMI, he did provide some insight concerning the expected healing period for a fingertip fracture like the one Ms. Smith suffered. In his deposition, Dr. Novak testified that a finger fracture usually heals within "four to six months." *Id.* at 77. He added, "Beyond that, it becomes outside the realm of what I would normally see and expect." *Id.* His records indicate he believed Ms. Smith was at maximum medical improvement (MMI). However, when Ms. Smith became tearful and insisted that she could not use her left hand to work, Dr. Novak offered her a functional capacity evaluation (FCE) in place of being released without any permanent restrictions.

Ms. Smith underwent the FCE and, when she returned to Dr. Novak's office to review the results on April 6, 2016, Dr. Novak declined to recommend permanent restrictions due to an "unreliable effort" during the FCE and released Ms. Smith at MMI. *Id.* at 233. Dr. Novak then completed a Form C-30A, which indicated Ms. Smith has four percent (4%) impairment to the left long finger, one percent (1%) impairment to her left hand and zero percent (0%) impairment to her body as a whole as a result of her work-related injury.

People Link paid temporary disability benefits for nearly three months, returning Ms. Smith to light duty work on November 12, before ultimately terminating her employment on January 27, 2015, without resuming payment of temporary disability benefits. The parties agreed that Ms. Smith earned $696.42 per week on the average resulting in a compensation rate of $464.28. The parties also agreed she was not at fault for her termination.

### Findings of Fact and Conclusions of Law

At a compensation hearing, Ms. Smith must establish by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016). The employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

Ms. Smith requested an award of "temporary disability benefits" in this claim. These benefits are of two types: temporary total disability and temporary partial disability. To be awarded temporary total disability benefits, an employee must prove: (1) she became disabled from working due to a compensable injury; (2) there is a causal connection between her injury and her inability to work; and (3) the duration of the period of disability. *See Jones v. Crencor Leasing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). However, in circumstances where the treating physician released an employee to work with restrictions before the employee reached maximum medical improvement, temporary partial benefits are appropriate if the employee can prove that, "the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury." *Id*. at *8. Here, because the treating physician released Ms. Smith to return to work with restrictions, her recovery, if any, lays in temporary partial disability benefits.

Ms. Smith asserted she is entitled to temporary partial disability benefits from the time of her termination on January 28, 2015, to April 6, 2016, the date Dr. Novak placed her at MMI. People Link argued Ms. Smith has not proven the causal connection between her work injury and her inability to work and that she failed to prove she was disabled by a compensable work injury. It asserted that Dr. Novak imposed work restrictions to accommodate her subjective complaints of hand pain, which were unrelated to Ms. Smith's work injury. Both parties, however, agreed that Ms. Smith suffered a compensable left long finger fracture and that People Link terminated Ms. Smith's employment due to no fault of her own.

A causal connection existed between Ms. Smith's injury and her inability to work at the time of her termination because Dr. Novak included "no use" of the long finger in restrictions imposed in November 2014 and "limited use" of that finger in restrictions imposed in December 2014. The Court finds that Dr. Novak's restrictions of "limited use" and "no use" of the left long finger disabled Ms. Smith from working absent accommodation of her restrictions. Therefore, Ms. Smith's period of temporary partial disability began when People Link terminated her on January 27, 2015. The next issue to determine is when her period temporary partial disability ended. To determine this issue, the Court looks to the testimony of Dr. Novak and Dr. Haslam.

In Dr. Novak's deposition, immediately following his statement that the December 2014 restrictions were appropriate for the work injury, he added that at Ms. Smith's next office visit, on October 27, 2015, he observed that "the fracture was completely healed" so that "there was no indication for any need for restrictions related to her work injury at that time." *Id* at 71. Dr. Novak clearly based his opinion regarding

4

restrictions on the healed fracture. He also mentioned the "long time" between visits and commented that it was "anyone's guess" as to when Ms. Smith's December restrictions became unnecessary, as he "didn't see her in that time period." *Id.* at 71, 77. Accordingly, Dr. Novak believed Ms. Smith fully recovered from her injury prior to October 27, 2015, but could not specify a recovery date because he did not examine her for the ten-month period preceding the October office visit. The Court, therefore, finds that Dr. Novak opined Ms. Smith reached MMI sometime before October 27, 2015, but lacked sufficient information to specify a date certain. With this uncertainty of an MMI date in mind, the Court now turns to the testimony from Dr. Haslam for clarification.

When Dr. Haslam saw Ms. Smith on August 14, 2015, she was more than twelve months removed from having suffered a left long finger fracture. At that office visit, Dr. Haslam observed her finger fracture had healed and testified: "From my opinion in August, I thought she could do full work activities." In the Court's view, this testimony presents the most reliable proof of when Ms. Smith could resume full duty work. The Court, therefore, finds that Dr. Haslam placed Ms. Smith at MMI on August 14, 2015.

In consideration of this analysis and its findings, the Court holds that Ms. Smith is entitled to recover temporary partial disability benefits from January 28, 2015, the date following her termination, through August 14, 2015, the date Dr. Haslam concluded she reached MMI. This is a period of twenty-eight weeks and three days. Based on her compensation rate of $464.28 per week, People Link shall pay Ms. Smith $13,198.82 of accrued temporary partial disability benefits.

*Permanent Partial Disability Benefits*

The opinion of the treating physician regarding the employee's permanent impairment is presumed accurate. Tenn. Code Ann. § 50-6-204(k)(7) (2016). The Court finds Dr. Novak is an authorized treating physician; thus, his opinion regarding permanent impairment is presumed accurate. Permanent partial disability is determined by multiplying the employee's impairment rating by four hundred and fifty (450) weeks. *Id*. at §50-6-207(3)(A). All cases of permanent partial disability shall be apportioned to the body as a whole, and compensation shall be paid to the injured employee "for the proportionate loss of use of the body as a whole resulting from the injury." *Id*. at §50-6-207 (3)(H).

Here, the parties agreed that Dr. Novak provided a four percent (4%) permanent impairment to the left long finger, which converted to one percent (1%) to the left hand and zero percent (0%) to the body as a whole, as defined by the 6th Edition American Medical Association (AMA) Guides. (See Table 15-12, p. 421) While the Court is sympathetic to Ms. Smith's argument that it is unfair for her to receive no permanent partial disability award despite having permanent impairment, the Court is nonetheless bound to decide cases within the confines of the Workers' Compensation Law. Without

5

countervailing expert medical opinion to outweigh the presumption of correctness afforded to Dr. Novak's impairment rating, the Court finds Ms. Smith is not entitled to an award of permanent partial disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Smith shall receive reasonably necessary future medical treatment as recommended by authorized treating physician, Dr. Vincent Novak, and as required by Tennessee Code Annotated § 50-6-204 (2016).

2. Ms. Smith's claim for permanent partial disability benefits is denied.

3. People Link shall pay Ms. Smith temporary partial disability benefits of $13,198.82.

4. Ms. Smith's claim for temporary partial disability benefits for the period from August 15, 2015, through April 6, 2016, is denied.

5. Counsel for Ms. Smith is awarded an attorney's fee of twenty percent of $13,198.82, or $2,639.76, to be paid from Ms. Smith's award.

6. Costs of this cause of $150.00 are assessed against People Link pursuant to Rule 0800-02-21-.07 of the Tennessee Compilation Rules and Regulations. People Link shall pay the costs within five days of this order becoming final.

7. Unless an appeal is filed with the Board of Appeals, this order shall become final thirty days after the date of issuance.

8. Unless an appeal is filed, the Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

**ENTERED THIS THE 22ND DAY OF MAY, 2017.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:

1. Deposition of Dr. Vincent Novak With Medical Records
2. Deposition of Dr. Jason Haslam With Medical Records
3. X-ray Report Dated December 29, 2014

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice filed March 30, 2015
3. Dispute Certification Notice filed April 27, 2017
4. Ms. Smith's Pre-Compensation Hearing Brief
5. Ms. Smith's Witness and Exhibit List
6. People Link's Pre-Compensation Hearing Statement
7. People Link's Witness and Exhibit List
8. Agreed Order Amending Second Initial Hearing Order
9. People Link's Objection to Admission of Form C-32
10. Second Initial Hearing Order
11. Agreed Order Amending Initial Hearing Order
12. Initial Hearing Order
13. Agreed Order Concerning Request for Expedited Hearing
14. Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the __22nd__ day of May, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax No. | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Julie Reasonover | | | | | X | julie@jstillman.com |
| Connor Sestak | | | | | X | csestak@morganakins.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8